UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 23-cr-232 (RDM) |
| v. : | |
| : | |
| CHRISTOPHER PEARCE, : | |
| : | |
| **Defendant** : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Defendant Christopher Pearce to 14 days' intermittent confinement as a condition of 36 months of probation. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

I.   Introduction

Defendant Christopher Pearce, a 42-year-old contractor from Pennsylvania, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9

1

Pearce pleaded guilty to a violation of 40 U.S.C. § 5104(e)(2)(G). The government's recommendation is supported by Pearce's (1) anticipation of and preparation for violence on January 6; (2) entry into the Capitol building through the broken Senate Wing Doors shortly after they were first breached, at a critical juncture in the rioters' forcible takeover of the Capitol; (3) lies to the FBI about his actions on January 6; and (4) lack of remorse for those actions.

The Court must also consider that Pearce's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Pearce's crime support a sentence of 14 days intermittent confinement as a condition of 36 months' probation in this case.

## II.   Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary repetition, the government refers to the general summary of the attack on the U.S. Capitol in the Statement of Offense. *See* ECF 25.

*Defendant Pearce's Role in the January 6, 2021 Attack on the Capitol*

<u>Pearce's Social Media Posts Before January 6, 2021</u>

In mid-December 2020, Pearce publicly commented several times on posts by former President Donald Trump's Facebook and expressed anger that Trump had not used his supposed executive power to have the military seize evidence and arrest people involved in election fraud. In one of these posts, Pearce wrote "you're gonna force american citizens that you love so much

---

million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

to do your jobs for you and then we will have unrest and war in the streets[.]" Pearce also commented on other Facebook users' posts expressing this same dissatisfaction with Trump's handling of the post-election claims of election fraud. For instance, referring to former President Trump, Pearce wrote,

> He won't do a fucking thing if they are crimes it should have been done . . . i dont[2] want to hear , patience its all part of the plan, you dont possess proof positive knowledge of a communist take over and total over throw of our government and waste time with dog and pony show court cases that go nowhere, when the eveidence is clear as day you use your excutive power to send in yhe military and seize all evidence before they destroy it all , while simultaneously making arrests if you have prior knowledge of crime and you hide it or do nothing you become an accomplice thats what happens to normal citizens , now he wants to tell everyone to go get those shots when on his first campaign he spoke about how vaccines were killing people and he  was against them and now he is a spokesperson for them, you honestly think this man is gonna do something about this when they haven't even reopened the 9/11 investigation, where thousands of innocent Americans were killed in obvious controlled demolitions , no one even died this time.

Pearce commented on another user's post, "We don't need another fuvking way to see the election was fraudulent we need military intervention and arrests to be made[.]" Not only did Pearce want former President Trump to use the military to arrest people and seize evidence, but also to "put on a whole new election[.]" Ominously, Pearce wrote, "The damn shame here is that 74 million Americans are gonna have to revolt and alot of innocent lives are gonna be lost , when our president could have already used executive action to put an end to it all[.]"

Throughout December, Pearce continued to write about his violent expectations for January 6. For example, he wrote a private Facebook message stating, "the 6th is when the electoral college votes either get accepted or denied either outcome is gonna be a powder keg." Also on that day, Pearce sent another Facebook message about the certification saying, "Ya its gonna be a

---

[2] Pearce's Facebook posts and other writings were riddled with colloquialisms, as well as numerous spelling and grammatical errors. This memorandum quotes those posts and other writings *verbatim*, without using "[sic]" to identify any errors, given how numerous they are.

3

powder keg no matter what the electoral college decides or if pence dismisses their votes, either way its gonna get crazy im just trying to be positive." He encouraged another person to travel to Washington D.C., writing, "You should make it bro , if im going to war i will go alone but I would rather have a brother next to me !"

By January 3, 2021, Pearce publicly commented on another Facebook users' post, "Everyone needs to be in DC on the 6th to stand up and make sure the constitution is not cast aside, 'they got the guns but we got the number gonna win ya we're takin over' we let them steal this election they have grounds to do whatever they want to us !"

Also on that day, in a private message exchange, Pearce said that he was "100%" going to Washington, D.C. on January 6.  He further explained: "The dude im working with i used to get my gear from , Bob, maybe a couple divers[3] meeting us down there and im meeting up with a sons of liberty[4] about 40 people when I get there , there is supposed to be over a million people !" After discussing travel logistics, the other user expressed that they wanted to go and Pearce replied, "Good it would be good to see you , I always said I wont join the military but ill fight if it ever came to our soil , well I figure now is that time , no matter what happens there will be craziness[.]" Pearce also stated that he "ordered a gas mask and gloves with hard rubber knuckles" and expressed disappointment that he hadn't procured "a vest." Pearce also sent the same user following photo of his newly acquired gas mask (Image #1):

---

[3] Pearce previously worked as an underwater welder. See PSR ¶ 44.
[4] The Sons of Liberty is a right-wing militia. See https://www.son-of-liberty.org/articles/why-join-a-militia



*Image # 1*

Pearce then commented that, "antifas main weapon [was] bear mace[.]" The other user asked if he planned to bring anything for self-defense, to which Pearce replied, "Collapsible state police issued baton . . . And gloves with hard rubber knuckles[.]"

During this time period, Pearce was actively spreading disinformation on Facebook about the certification of the Electoral College Vote for the 2020 Presidential Election. For example, on December 13, 2020, Pearce reposted a Facebook post written by another Facebook user that purported to explain the upcoming Electoral College vote and subsequent certification proceeding as follows: "either on Monday or January 6th (when Congress count the votes) the state legislatures will CHANGE their certifications to Trump." The writer later wrote, "I believe that the SCOTUS will keep out of this for sake of not showing partiality. But if they DO get involved, it will be after January 6th where a constitutional crisis will exist and then they would need to step in and settle the matter in 3 possible ways. 1, Ignore the complaints, Trump wins... 2, Take the case, invalidate the elections, give it to the states to vote...Trump wins as we have a state majority of 26 or... 3, Take the case, order a nationwide audit and recertification. With all the fraud.....Trump wins. In the end, Trump will win. You can roll these dice as many times as you want. The Constitution will win this election for Trump[.]"

*Pearce's actions on January 6, 2021*

On January 6, 2021, Pearce attended the rally at the Ellipse, but left early and witnessed the initial breach of the U.S. Capitol building near the Senate Wing Doors at 2:13 p.m.

At approximately 2:25 p.m. – 12 minutes after the initial breach – Pearce entered the Capitol building through the Senate Wing door while wearing the gas mask described above and recording the events on his mobile telephone—a video that Pearce later posted to his Facebook account. Surveillance video from the Capitol Police security system also captured Pearce as he entered the Capitol, contradicting Pearce's later self-serving claim to the FBI that he was pushed into the Capitol building by other rioters and then was prevented from leaving:



*Image # 3 CCTV Near the Senate Wing Door Captures Pearce Filming*

Once inside the Capitol building, Pearce walked down the hallway towards the Crypt. Pearce reached the Crypt by approximately 2:26 p.m. (Image # 4).



*Image # 4 CCTV from Crypt Captures Pearce With Face Covering Removed*

Pearce remained in the Crypt for approximately 2 minutes and 33 seconds before heading back towards the Senate Wing Door. Pearce exited through a broken window next to the Senate Wing door at approximately 2:31 p.m., as depicted below:



*Image # 5 CCTV from Senate Wing Door Captures Pearce Exiting*

On the evening of January 6, 2021, Pearce wrote on Facebook, "I left trump speech went to the capital was right in the front when they busted the doors in the one video is from inside the

7

capital , pence betrayed trump and we stormed it . . .." In a private message exchange on Facebook, Pearce wrote that former Vice President Mike Pence "is a bitch, hunker down cause after what I saw today when biden is sworn in expect it times 100[.]" While referring to the events at the Capitol, Pearce wrote "It did absolutely nothing and pence is a bitch and trump should have declared martial law months ago , so he is useless too . we are fucked get ready to be force vaccinated , and told how much you can own legally[.]" Pearce also wrote that "people are pissed there are pedophiles and murders running our government stealing our election making laws for us they refuse to follow for themselves, raising the shit out-of our taxes so they can make shady back door deals and sell out our country, which is treason [. . .]"

In a separate series of Facebook messages, Pearce stated: "I was there 10 feet away while they were busting in the capital doors and windows then we all went in kinda got forced in cause antifa was dress like trump supporters instigating it." In response to a question about the presence of "antifa" militants on January 6, Pearce wrote: "They just deny deny deny, and trump goes ok, no cause they were barley seen they were dressed like trump supporters and mixed in with us , and the police were told to stand down cause they started violence and it escalated quick , then they busted the windows outta the doors and regular windows and people just lost it it sparked what we were all feeling[.]" Pearce added that he had witnessed several flash bags go off near him and offered, "I have a feeling it's going to get much worse . . . Especially on jan 20th its not gonna be pretty there might possibly be guns involved then, I'm just speculating after what happen today[.]" Despite acknowledging the crowd's dissatisfaction with the outcome of the certification, Pearce continued to claim that "antifa started the violence , cause it forced them to not only recess but also condem all Trumpers and go against him and accuse him of insighting everything[.]"

*Pearce's Social Media Posts After January 6, 2021*

In the days after January 6, 2021, Pearce continued to express his anger with former Vice President Mike Pence. For example, on January 7, he replied to another Facebook user's comment, "I was physically in DC last night very close to the action pence has given up Trump has given up we are all screwed for at least the next four years." On January 9, Pearce commented on a photo posted to Newsmax's Facebook page, writing, "Pence can go fuck himself he had better run for the hills and hide!" On January 11 and January 13, Pearce commented that he believed Mike Pence to be "a traitor[.]

As part of another Facebook exchange that day, Pearce acknowledged that, on January 6th, he had received notifications about the curfew on his phone, one in the early afternoon and a second one around 7:00 p.m. In that exchange, he again acknowledged that he had witnessed the initial breach of the Capitol building.

*Pearce's FBI Interviews*

On March 16, 2022, Pearce consented to a non-custodial interview with FBI agents at his home. Pearce admitted that he had gone to the U.S. Capitol on January 6, 2021. At first, Pearce claimed he "never went inside" and said "I was in the courtyard but never inside." But after being presented with evidence that contradicted that assertion, Pearce admitted that he had entered the Capitol. Even then, he falsely stated that he had been "was pushed in by the crowd" and said he was only in the building for a minute. After being shown evidence that belied that version as well, Pearce clarified that he was pushed into the Capitol, went through a hallway to an open, round part of the building and remained there until the tear gas began. Pearce also claimed that he left the building because the gas began to burn his eyes and throat. Pearce stated that, after exiting the building, he stood outside for about an hour until he went back to the hotel where he was staying.

At one point in the interview, Pearce asked the agents if the FBI was investigating the fraudulent election or Pennsylvania Governor Wolfe's COVID-19 policies. During the interview, Pearce justified his actions on January 6 by saying that the U.S. Capitol is a public building paid for by tax payors.

In a follow-up telephonic interview with FBI agents in March 2022, Pearce described the clothing he wore on January 6, 2021, including grey pants, a green camouflage hoodie, googles, and a respirator. Pearce stated that the respirator could be bought at Home Depot and had white filters. Pearce further explained that he brought the respirator before his trip to Washington, D.C. because he anticipated tear gas, and that "others" were going to start trouble. In another follow-up FBI interview the following month, Pearce identified himself in still images from Capitol Police CCTV, but again claimed he was pushed into the building by the crowd and could not turn around to exit.

*The Charges and Plea Agreement*

On July 21, 2023, the United States charged Pearce by a four-count Information with violating 18 U.S.C. §§ 1752(a)(1) and (a)(2) and 40 U.S.C. §§ 5104(e)(2)(D) and (e)(2)(G). On October 27, 2023, pursuant to a plea agreement, Pearce pleaded guilty to Count Four of the Information, charging him with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, Pearce agreed to pay $500 in restitution to the Architect of the Capitol.

**III.     Statutory Penalties**

Pearce now faces a sentencing for violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, Pearce faces up to six months of imprisonment and a fine of up to $5,000. Pearce must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As

this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

IV.     **Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days of intermittent confinement as a condition of 36 months of probation.

### A. The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Pearce's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Pearce, the absence of violent or destructive acts is not a mitigating factor. Had Pearce engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Pearce's case is that he anticipated and was prepared for physical and possibly violent confrontations on January 6. Before making his way to the Upper West Terrace and Senate Wing Door, he donned a gas mask to protect himself from chemical irritants. He claimed to have a "collapsible state police issued baton" and "hard knuckle gloves" that could be used as weapons and lamented that he could not procure a "vest," likely a tactical vest that could carry weapons or protect from projectiles. Once he arrived at the Capitol, the reality

11

of violence was readily apparent to him. As Pearce stated in the Facebook posts described above, Pearce saw flash bangs being deployed and witnessed the initial breach of the U.S. Capitol at the Senate Wing Door. Pearce entered the building approximately 12 minutes after the windows adjoining that door were shattered and rioters first entered the building.

Prior to January 6, Pearce discussed in detail the Electoral College certification that was scheduled to take place on that day. Despite being fully aware of the Joint Session of Congress, Pearce chose to enter onto restricted grounds, climb to the Upper West Terrace, enter through the broken Senate Wing Door and make his way to the Crypt. As he stated on his Facebook page, Pearce only left the building after his gas mask proved ineffective against chemical irritants deployed inside the building.

When he was finally approached by FBI agents, he first lied to them and said he did not enter the Capitol building. When confronted with irrefutable evidence that he had, he lied again and claimed he was pushed into the building by others. Even though Pearce eventually pleaded guilty and demonstrated some measure of responsibility, his initial instinct, unlike many January 6 defendants, was to lie his way out of it.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration.

### B. Pearce's History and Characteristics

As set forth in the PSR, Christopher Pearce's criminal history does not involve violent crimes but is not negligible or entirely dated. It consists of misdemeanor convictions for Possession of Drug Paraphernalia (PA, 1999); Possession of Marijuana and Use/Possession of Drug Paraphernalia (PA, 2003); Use/Possession of Drug Paraphernalia and Driving without a License (PA, 2020). ECF 26 ¶¶ 26-28. Pearce also entered an 18-month deferred prosecution in 2014 in

New Jersey for Possession of a Controlled Dangerous Substance – Testosterone and Unlawful Possession of a Weapon-BB Gun. ECF 26 ¶ 30.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by Pearce. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic

processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to Pearce also weighs heavily in favor of a term of incarceration.

First, as discussed above, Pearce's history of prior arrests and convictions, reveals a clear pattern of disrespect for the law. *See* Section IX(B) *supra.*

Second, although Pearce accepted responsibility by pleading guilty, his post-January 6 statements are troubling. Pearce has not taken any steps to distance himself from his words and actions on January 6, 2021. The Court should view any remorse Pearce expresses at sentencing with skepticism at best. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan).

Indeed, the need for specific deterrence is especially strong with another presidential election approaching and the potential for political violence looming ominously. The Court must sentence Pearce in a manner sufficient to deter him from going down that road again. A sentence without any custodial component will be less effective in accomplishing that important consideration than with such a component.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[5] This Court must sentence Pearce based on his own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Pearce has pleaded guilty to Count four of the Information, charging him with Parading, Demonstrating and Picketing in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." "Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir. 2006).

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those

---

[5] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

15

cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012); *see United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly, judges have taken different approaches to folks that are roughly in your shoes.") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr. at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson).

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, Judges in other cases where the defendant made inflammatory statements on social media have sentenced misdemeanor offenders to terms of incarceration.

In *United States v. Joshua Colgan*, 22-CR-224-DLF, the defendant plead guilty to the same offense that Pearce has. Colgan invited others to join him to travel to Washington D.C. and stated the purpose for going was to "storm . . . the capital" and "To help make sure our President doesn't leave his seat[.]" Colgan referred to January 5, 2021 as "the start of a revolution . . . to overthrow this corrupt government." These statements are comparable to Pearce's own incitement of violence in the Facebook posts summarized above. For example, as noted, Pearce called for "revolt" and compared traveling to Washing D.C. for January 6 as going to war. (i.e., "I always said I wont join the military but ill fight if it ever came to our soil , well I figure now is that time , no matter what happens there will be craziness[.]") Pearce clearly stated he was going to Washington D.C. on January 6, 2021 because of the electoral college vote count and referred to the outcome of that as being a "powder keg." Similar to Pearce, Colgan entered the Capitol through the Senate Wing Door and stayed in the building for 9 minutes, albeit nearly an hour after Pearce and more than an hour after the initial breach. After January 6, 2021, Colgan blamed the events on "antifa." Pearce did the same, but also continually referred to Vice President Mike Pence as a traitor. Judge Friedrich sentenced Colgan to 28 days of incarceration. A comparable sentence is appropriate in this case.

Furthermore, judges have also looked to a January 6 defendant's lack of remorse when imposing incarceration for violations of .41 U.S.C. § 5104. In *United States v. William Vogel* 21-CR-56-CKK, the defendant pleaded guilty to one count of Parading, Demonstrating or Picketing in the Capitol Building. Much like Pearce, Vogel entered the building 13 minutes after the initial breach. Vogel was inside the building for 20 minutes before being escorted out by police. Similar to Pearce posting the video of his entrance into the Capitol on Facebook, Vogel broadcast video of his time in the building. Like Pearce, Vogel also did not demonstrate remorse. Not only did

Pearce blame the violence on "antifa," he claimed to have been pushed in the building and asked the agents investigating him if the FBI was investigating election fraud and a Governor's COVID-19 policies. Judge Kollar-Kotelly sentenced Vogel to one month of incarceration.

In *United States v. Kenneth Armstrong* 22-CR-45-RCL, the defendant plead guilty to Parading, Demonstrating, or Picketing in a Capitol Building. and was sentenced to 14 days incarceration. Armstrong entered through the Senate Wing Door approximately 45 minutes after Pearce and went to the Crypt before exiting 13 minutes later. Much like Pearce, Armstrong bragged about participating in the January 6 riot on Facebook and showed no remorse for his actions. Judge Lamberth sentenced Armstrong to 45 days' incarceration.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

V.      **Restitution**

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary

authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[6] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Pearce must pay $500 in restitution, which reflects in part the role Pearce played in the riot on January 6.[7] Plea Agreement at ¶ 14. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Pearce's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 67.

---

[6] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[7] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VI. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Pearce to 14 days' intermittent confinement as a condition of 36 months of probation. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Pearce's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   s/ *Kyle R. Mirabelli*
Assistant United States Attorney
N.Y. Bar No. 5663166
601 D Street N.W.
Washington, D.C. 20530
Phone: (202) 252-7884
Email: kyle.mirabelli@usdoj.gov